UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPRING AWAKENING, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> CERTAIN UNDERWRITERS AT LLOYDS, LONDON, <br><br> Defendant. | Case No.: 22 Civ. 5195 (PGG) <br><br> **STIPULATED ORDER GOVERNING EXCHANGE OF ELECTRONICALLY STORED INFORMATION (ESI)** |

It is stipulated and agreed by Spring Awakening, LLC ("Plaintiff") and by Certain Interested Underwriters at Lloyd's, London ("Defendant"), (singularly, "Party" and collectively, "Parties") to comply with the procedures and obligations for the exchange and production of electronically stored information ("ESI") set forth below. Nothing in this Order shall be construed to affect the admissibility of discoverable information. And nothing in this Order shall relieve a Party of its duty to search for responsive information in locations known by the Party to contain such information.

The Parties agree:

1.  **Format for Files for Production**

    a)      All documents produced by the Parties, except those produced natively or database data, shall be provided single-page 300 dpi- resolution group IV TIF format ("tiff") format, along with appropriately formatted database load files, and accompanied by reasonable metadata fields as listed below. Where documents are produced in tiff format, each document shall be produced along with a multi-page, document-level searchable text file ("searchable text") as rendered by a

text extraction program in the case of electronic originals, or by an Optical Character Recognition ("OCR") program in the case of scanned paper documents. Searchable text of documents shall not be produced as fielded data within the ".dat file" as described below.

b) Database load files shall consist of: (i) a comma-delimited values (.dat) file containing: production document identifier information, information establishing "parent and child" relationships within document "families," metadata or objecting fielded information (or bibliographic coding in the case of paper documents), custodian or document source information; and (ii) an Opticon (.opt) file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder. If any of the documents produced in response to any Party's Requests are designated as confidential, in addition to marking the documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," as well as native file loading/linking information (where applicable).

c) All Microsoft Excel or other commercially available spreadsheet programs, Portable Document Files (PDFs), as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "NativeLink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent a Party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the Party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

d) For email documents, to the extent non-responsive, non-substantive, graphic objects embedded within emails (such as logos, signature blocks, and backgrounds) are extracted during data processing and treated like attachments to the email, a Party may exclude those files from document production.

e) Documents originally created or stored on paper shall be produced in tiff format. Relationships between documents shall be identified within the .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each document shall be provided as a multi-page text file. Ensure that page breaks must be included within text files, paginated by Bates number corresponding to their images. If the production utilizes tiff images, it must include an opt. image load file.

f) Extracted text will not be provided for electronic documents that have been redacted—e.g., for privilege or immunity—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. Documents that do not render in a readable format to tiff, such as Excel spreadsheets, may be redacted in native form as long as the producing party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving party in the production cover letter or by way of a native redaction field.

2. **Deduplication (Global)**

The Parties will endeavor to deduplicate ESI. Documents will be deduplicated as against the entire population for all custodians and deduplicated custodians listed as above in Section 1. Duplicates should be removed from the production set based on Message ID, MD5 and/or SHA-1

hash values at the document level. For emails with attachments, or other document groupings, the group should only be treated as a duplicate if they are identical both in their bodies and in all their attachments. Therefore, an email attachment shall not be treated as a duplicate merely because an identical copy of the document exists as a separate file.

The Parties will retain all deduplicated documents for the duration of the action or as agreed and may request production of deduplicated documents for particular custodians by identifying the applicable Bates numbers in writing.

**3.   Privilege Log**

The Producing Party to discovery shall provide a privilege log for all material withheld from a production on the basis of privilege, work-product doctrine, or any other claimed protection(s) in Excel format (or CSV).

**a)** Delivery of privilege logs shall not occur until the end of discovery, or until all documents are produced.

**b)** Fields to be included in the log:

    **i.** Bates Start/End;

    **ii.** Custodian;

    **iii.** Document Type (I.e. Email/Attachment);

    **iv.** Subject/Title;

    **v.** Author;

    **vi.** Recipients;

    **vii.** CC;

    **viii**. BCC;

    **ix.** Date;

      **x.** Confidentiality;

      **xi.** Privilege Reason (I.e. Attorney-Client/Work Product);

      **xii.** Privilege Note;

      **xiii.** Redaction (True/False);

      **xiv.** Redaction Note.

    **c)** Inadvertent production of documents, subject to a claim of work-product immunity, the attorney-client privilege, or other legal privilege projecting information from discovery shall not constitute a waiver of the immunity or privilege. The producing party shall notify the receiving party or any such inadvertent production and the basis of the claim within a reasonable amount of time of having identified the inadvertent production.

      **i.** Further, a party receiving what appears to be inadvertently produced privileged material shall promptly notify the producing party of the potentially inadvertent production, in which case the producing party shall have ten (10) days to confirm whether it believes the document was in fact inadvertently produced.

      **ii.** All documents that a producing party identifies as having been inadvertently produced, and all printed copies thereof shall, upon request, be returned to the producing party. All notes or other work product of the receiving party reflecting the contents of such materials shall be destroyed, and the document shall be deleted from any litigation-support or other database.

        **1.** Therefore, the receiving party shall not use any information from said "claw backed" document for any purpose in the litigation.

**iii.** The receiving party shall confirm in writing, if the producing party requests, that each of the aforementioned steps have been taken in regard to the inadvertent production of documents.

**iv.** If the receiving party elects to file a motion as set forth below, the receiving party may request that the producing party file the inadvertently produced documents under seal, and may retain possession of any notes or other work product of the receiving party reflecting the contents of such materials pending the resolution by the Court of the motion below, but not use or further distributed such notes or work product until the motion is resolved.

**1.** If the receiving party's motion is denied, the receiving party shall promptly comply with the immediately preceding provisions of this section.

**2.** No use shall be made of such inadvertently produced documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the request to return or destroy them.

**v.** The party receiving such inadvertently produced documents may, after receipt of the producing party's notice of inadvertent production, move the Court to dispute the claim of privilege or immunity. Such challenge shall be made by written notice by the receiving party of its intent to make such a challenge.

4. **Miscellaneous**

   **a)** All electronically stored information shall be processed and produced using GMT/UTC.

   **b)** This ESI Stipulation may be re-executed and/or modified by agreement of the Parties; for instance, to allow non-signatory parties to this action or nonparties producing ESI to join this agreement.

5.  **Production of ESI**

   a)  ESI shall be produced as maintained in the ordinary course of business, including agreed upon metadata as provided below, custodian, time period, and searchable text.

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X |
| Duplicate Custodian (or similar name) | Name of duplicate custodian(s) of email(s) or file(s) produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X |
| From | From field extracted from an email message | X | |
| To | To or Recipient extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| EmailSubject | Subject line extracted from an email message | X | |
| Filename | File name — Original name of file as appeared in original location | | X |
| Title | Title field extracted from the metadata of a non-email document | | X |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X |
| DateLastModified | The application recorded time on which the document was last modified | | X |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| FileExtension | The file extension for the document | | X |
| NativeLink | Relative path to any files produced in native format | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |
| Redaction | Identifies if a document has been redacted | X | X |

Dated: April 19, 2023

**BRAGAR EAGEL & SQUIRE, P.C.**

/s/ *Lawrence P. Eagel*
_____
Lawrence P. Eagel
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (212) 308-5888
Cell: (646) 734-9543
*eagel@bespc.com*
*Attorneys for Plaintiff*
*Spring Awakening, LLC*

**VOGRIN & FRIMET, LLP**

_____
Michael J. Frimet
150 Broadway, Suite 1200
New York, NY 10038
Tel: (212) 513-1075
*mfrimet@vogrinfrimet.com*
*Attorney for Defendant*
*Certain Interested Underwriters at*
*Lloyd's, London*

Dated: April 26, 2023
       New York, New York

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge